KING, Chief Judge:
Plaintiffs sued several Texas state officials, asserting violations of the Medicaid *410 statute, the Americans with Disabilities Act, and the Rehabilitation Act. Relying in part on state-sovereign immunity, Defendants moved the district court to dismiss Plaintiffs’ claims. The district court denied Defendants’ motion in part, concluding that the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), provided jurisdiction over this official-capacity suit seeking prospective relief against state officers. Disappointed, Defendants filed this interlocutory appeal, seeking to vindicate their Eleventh Amendment immunity from suit. We agree with the district court that state officers, sued in their official capacities for prospective relief, are proper defendants under Title II of the Americans with Disabilities Act and are not immune under the Eleventh Amendment. Further, we hold that Defendants’ other contentions on appeal relate to the merits of this controversy, not the Eleventh Amendment; therefore, these arguments are beyond the scope of this interlocutory appeal. We affirm.

I. Background

Plaintiffs are twenty-one mentally disabled Texas residents (most of whom sue through their next friends) and the Arc of Texas (a nonprofit organization that advocates for the rights of individuals with mental disabilities). In September 2002, they brought this action, on behalf of themselves and all others similarly situated,[1] against Defendants. Defendants are three Texas state officers sued in their official capacities as Commissioners of the Texas Health and Human Services Commission, the Texas Department of Human Services, and the Texas Department of Mental Health and Mental Retardation.[2] Plaintiffs allege that Defendants are not adequately providing community-based living options to individuals, like themselves, with mental retardation and other developmental disabilities.
The programs to which Plaintiffs seek access are offered by Texas as part of its Medicaid plan. Title XIX of the Social Security Act established Medicaid, a cooperative federal-state program that provides federal funding to states that furnish medical services to needy individuals. See 42 U.S.C. §§ 1396-1396v (2000); Frew v. Hawkins, 540 U.S. 431, 124 S.Ct. 899, 901, 157 L.Ed.2d 855 (2004). While state participation is voluntary, if a state elects to join the program, it must administer a state plan that meets federal requirements. See 42 U.S.C. § 1396a(a) (describing the required contents of a state plan); Frew, 124 S.Ct. at 901. States can, however, obtain certain waivers, which allow them to deliver experimental services under a relaxed set of regulatory strictures. One such waiver permits states to offer home and community-based services for disabled individuals who would otherwise require institutional care. See 42 U.S.C. § 1396n(c)(l). Under a § 1396n(c) waiver, certain obligations that otherwise attach to states’ provision of Medicaid services are waived, and participating states may obtain federal reimbursement for services that would not normally be reimbursable under the Medicaid program. See id. § 1396n(c)(3) (detailing the requirements that may be waived under a § 1396n(c) waiver); id. § 1396n(c)(4)(B) (explaining the services that may be provided under a § 1396n(c) waiver).
Plaintiffs’ claims center on two § 1396n(c) waiver programs offered by *411 Texas for mentally disabled individuals. First, the Home and Community-Based Waiver Services program (the “HCS” program) provides services that enable individuals with mental retardation to remain at home, live independently, or live in small home-like settings. The HCS program thereby helps those individuals avoid institutional living environments. Second, the Community Living Assistance and Support Services waiver program (the “CLASS” program) provides similar assistance to individuals with other developmental disabilities.

II. Proceedings in the District Court

Plaintiffs’ second amended complaint alleges that Defendants have denied them access to the HCS and CLASS programs. According to Plaintiffs, this denial of access violates several provisions of federal law — namely, (1) four subsections of the federal Medicaid statute, including its due process provision (i.e., § 1396a(a)(3)[3]), and its implementing regulations; (2) Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165 (2000), and its implementing regulations; (3) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. § 794(a) (West 1999 & Supp.2004), and its implementing regulations; and (4) the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiffs assert causes of action under 42 U.S.C. § 1983, Title II, and § 504, and they seek declaratory and injunctive relief.
Defendants moved to dismiss under Rule 12(b)(6) and Rule 12(b)(1), contending that several of Plaintiffs’ claims failed to state a claim upon which relief could be granted and asserting Eleventh Amendment immunity from the entire suit. In May 2003, the district court granted Defendants’ motion in part and denied it in part. The district court dismissed, for failure to state a claim, Plaintiffs’ Due Process and Equal Protection claims. Similarly, the court dismissed, for failure to state a claim, all but one of Plaintiffs’ § 1983 claims regarding alleged infringements of the Medicaid statute, concluding that only the due process provision in § 1396a(a)(3) was enforceable under § 1983.[4] Concerning Plaintiffs’ Title II and § 504 causes of action, the court ruled that Plaintiffs’ complaint did state actionable claims under each statute. Further, since Plaintiffs sued state officers for prospective relief, the court relied on the doctrine of Ex parte Young in holding that the Eleventh Amendment did not bar Plaintiffs’ Title II and § 504 claims.
In sum,' the district court allowed three of Plaintiffs’ causes of action to proceed: (1) their § 1983 claim based on violations' of the due process provision of the Medicaid statute (§ 1396a(a)(3)); (2) their Title II claim; and (3) their § 504 claim. Defendants appeal from that portion of the district court’s May 2003 order that denied their motion to dismiss on the basis of Eleventh Amendment immunity. Under the collateral order doctrine, this court has *412 jurisdiction over an interlocutory appeal from a denial of a motion to dismiss asserting Eleventh Amendment immunity. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144-45, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). In November 2003, this court granted the United States’s unopposed motion to intervene on behalf of Plaintiffs.[5]

III. Standard of Review

This court reviews denials of Eleventh Amendment immunity de novo. Cozzo v. Tangipahoa Parish Council — President Gov’t, 279 F.3d 273, 280 (5th Cir.2002).

IV. Texas’s Entitlement to Eleventh Amendment Immunity From Suit

The Eleventh Amendment has been interpreted by the Supreme Court to bar suits by individuals against noncon-senting states. Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). In addition, the principle of state-sovereign immunity generally precludes actions against state officers in their official capacities, see Edelman v. Jordan, 415 U.S. 651, 663-69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), subject to an established exception: the Ex parte Young doctrine. Under Ex parte Young, “a federal court, consistent with the Elev enth Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.” Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Here, the district court relied on the Ex parte Young exception in ruling that the Eleventh Amendment does not bar Plaintiffs’ claims.

A. The Parties’ Contentions

Texas maintains that a plaintiff may not proceed under Ex parte Young unless she asserts a violation of a federal right that arises from a valid federal law that is enforceable against the defendant state. In Texas’s view, Plaintiffs’ § 1983, Title II, and § 504 claims do not satisfy these prerequisites to an Ex parte Young action because none alleges a violation of a valid federal right that is enforceable against Defendants. Texas presents four arguments on appeal. First, Texas contends that the district court incorrectly determined that Plaintiffs can enforce the due process provision of the federal Medicaid law, § 1396a(a)(3), under § 1983. Second, Texas asserts that an action cannot be brought under Ex parte Young to enforce Title II of the ADA, since a state officer is not a proper defendant under Title II. Third, the State argues that Congress lacked the power under either § 5 of the Fourteenth Amendment or the Commerce Clause to enact the substantive requirements in Title II and that Title II violates the Tenth Amendment. Fourth, Texas maintains that § 504 of the Rehabilitation Act is unconstitutional as applied to Defendants because it violates the relatedness requirement imposed on Spending Clause legislation in South Dakota v. Dole, 483 U.S. 203, 207, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). Accordingly, Texas contends that state-sovereign immunity bars Plaintiffs’ suit because Plaintiffs have not alleged a violation of any valid federal law.
Plaintiffs and the government respond that Texas is attempting impermissibly to broaden the scope of this interlocutory appeal. By articulating these “prerequisites” to an Ex parte Young suit, they assert, the State invites this court to reach the merits of Plaintiffs’ claims and Defendants’ defenses to liability. Instead, Plaintiffs ar *413 gue, this court must limit its review to whether the district court correctly concluded that Texas’s Eleventh Amendment immunity from suit does not bar it from hearing Plaintiffs’ § 1983, Title II, and § 504 claims. Accordingly, Plaintiffs and the government maintain that this court should refuse to consider all but one of Texas’s arguments, i.e., its contention that an Ex parte Young suit cannot be brought to enforce Title II.
Since Plaintiffs and the government concede that Texas’s second contention is an appropriate subject of consideration in this interlocutory appeal, we address this argument first.

B. Whether state officers are proper defendants under Title II

Title II provides in relevant part that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132 (2000). The State asserts that the district court erred in denying it Eleventh Amendment immunity from Plaintiffs’ cause of action under Title II because a claim cannot be brought under Ex parte Young to enforce that statute. Texas maintains that a state officer is not a proper defendant under Title II; only public entities can be sued under the statute. Thus, since Ex parte Young only allows suits against state officers, Texas reasons that Plaintiffs’ Title II claims must be dismissed. In response, Plaintiffs and the government argue that Title II can be enforced through suits for prospective relief against state officers, even though the substantive requirements of the statute apply only to public entities, because a suit against a state officer in her official capacity is really a suit against the state agency itself.
Texas’s contention presents an issue of first impression in this circuit. The State relies primarily on the Seventh Circuit’s opinion in Walker v. Snyder, 213 F.3d 344 (7th Cir.2000).[6] In Walker, the court held that a plaintiff could not bring an Ex parte Young suit to enforce Title II because the only proper defendant “is the public body as an entity.” Id. at 347. But Walker, decided in 2000, has been undermined by the Supreme Court’s subsequent statement in Garrett that Title I of the ADA could be enforced in an Ex parte Young action. Garrett, 531 U.S. at 374 n. 9, 121 S.Ct. 955. Indeed, the Seventh Circuit has disavowed Walker’s holding on this issue, concluding that it “did not survive” Garrett. Bruggeman v. Blagojevich, 324 F.3d 906, 912-13 (7th Cir.2003). Even though Walker has been abrogated, Texas still contends this court should follow that decision, since the remark from Garrett that the Bruggeman court relied on was dictum.
Although the Court’s comment in Garrett was not essential to the judgment, the courts of appeals have been unanimous in rejecting arguments that state officers cannot be sued for prospective relief in *414 their official capacities for violations of Title II.[7] In addition to this substantial authority from other circuits, Supreme Court precedent makes clear that “a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official’s office.” Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); accord Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (“Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.” (citations and internal quotation marks omitted)). Only for the purposes of the Eleventh Amendment are “official-capacity actions for prospective relief ... not treated as actions against the State.” Graham, 473 U.S. at 167 n. 14, 105 S.Ct. 3099 (citing Ex parte Young).
We thus join the Second, Sixth, Seventh, Eighth, and Ninth Circuits in holding that Plaintiffs’ Ex parte Young suit to enforce Title II can proceed; Defendants have been sued in their official capacities and are therefore representing their respective state agencies (which are proper Title II defendants) for all purposes except the Eleventh Amendment.[8]

*415
C. Texas’s other arguments on appeal

When stripped of their Eleventh Amendment gloss, Texas’s three remaining arguments essentially target the merits of Plaintiffs’ claims, rather than Plaintiffs’ reliance on the doctrine of Ex parte Young to establish jurisdiction. As we will see, these defenses to liability are beyond the scope of this interlocutory appeal from a denial of Eleventh Amendment immunity from suit. See P.R. Aqueduct & Sewer Auth., 506 U.S. at 144, 113 S.Ct. 684 (explaining that the Eleventh Amendment “confers an immunity from suit”).

1. The constitutionality of Title II and § 50k

We first turn to Texas’s contentions that Congress lacked the power to enact the substantive provisions of Title II and § 504. The State provides no authority for its assertion that a federal court must determine the constitutionality of a federal law in the course of determining the applicability of the Ex parte Young exception. Instead, the State misleadingly quotes the Supreme Court’s opinion in Gonzaga University v. Doe for the proposition that, “[a]s a prerequisite to bringing a Young suit, ... ‘a plaintiff must assert the violation of a federal right, not merely a violation of federal law.’ ” Texas Br. at 13 (quoting Doe, 536 U.S. 273, 282, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)). But this passage in Doe involved the prerequisites for stating a claim under § 1983, not the requirements for avoiding an Eleventh Amendment defense to suit through the vehicle of an Ex parte Young action.[9] Texas relies heavily on this misinterpretation of Doe in contending that Plaintiffs cannot proceed under Ex parte Young unless this court first determines that their claims rely on federal laws that are both constitutional and enforceable against the State. But Texas simply provides no support for its contention that a court must determine the validity of a plaintiffs cause of action in the course of deciding whether an Ex parte Young suit can proceed in the face of a state’s Eleventh Amendment defense.
Texas’s broad understanding of the scope of this interlocutory appeal is not only unprecedented, more importantly, it flies in the face of the Supreme Court’s reasoning in Verizon Maryland, Inc. v. Public Service Commission, 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). There, Verizon brought suit in federal district court, seeking relief from an order of the Maryland Public Service Commission. Id. at 640, 122 S.Ct. 1753. Verizon alleged that the Commission’s order violated federal law. Id. In ruling that the district court lacked jurisdiction to hear Verizon’s action, the Fourth Circuit held, inter alia, that the Eleventh Amendment did not permit Verizon to sue individual commissioners in their official capacities. Id. In the words of the Supreme Court, the “Fourth Circuit suggested that Verizon’s claim could not be brought under Ex parte Young, because the Commission’s order was probably not inconsistent with federal *416 law after all.” Id. at 646, 122 S.Ct. 1753. The Court swiftly rejected this reasoning, noting that “the inquiry into whether suit lies under Ex parte Young does not include an analysis of the merits of the claim.” Id. (emphasis added). On the contrary, the Court explained that “[i]n determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a ‘straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.’ ” Id. at 645, 122 S.Ct. 1753 (quoting Idaho v. Coeur d’Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O’Connor, J., concurring in part and concurring in the judgment)) (alteration in original); see also Coeur d’Alene, 521 U.S. at 281, 117 S.Ct.2028 (“An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the Young fiction.” (emphasis added)). Thus, the Court made clear that analyzing the applicability of the Ex parte Young exception should generally be a simple matter, which excludes questions regarding the validity of the plaintiffs cause of action.
Texas attempts to distinguish Verizon, asserting that its arguments contesting the constitutionality of Title II and § 504 are appropriate for consideration in this interlocutory appeal, even though an argument that it has not violated those statutes would not be. We are not persuaded. Like other defenses to liability, the State’s arguments do not challenge the district court’s power under Ex parte Young to adjudicate Plaintiffs’ claims. Rather, the State seeks to have Plaintiffs’ Title II and § 504 claims dismissed on the merits on the ground that the statutes’ substantive provisions are unconstitutional; such a disposition would not be a determination that the Ex parte Young exception is inapplicable or that the Eleventh Amendment bars a federal court from hearing Plaintiffs’ action. In other words, resolution of the constitutional questions urged by Defendants is irrelevant to the question whether Texas’s Eleventh Amendment immunity from suit has been infringed. Moreover, our refusal to consider the constitutional issues in this interlocutory appeal comports with the rationale for allowing an interlocutory appeal from denials of Eleventh Amendment immunity. Unlike a State’s entitlement to Eleventh Amendment immunity from suit, the constitutionality of Title II and § 504 can be reviewed effectively on appeal from a final judgment. Cf. P.R. Aqueduct & Sewer Auth., 506 U.S. at 144-45, 113 S.Ct. 684 (explaining that the question of state-sovereign immunity is (1) conclusively determined by the denial of a motion to dismiss, (2) completely separate from the merits of the action, and (3) “effectively unreviewable on appeal from a final judgment”). We consequently follow the teaching of Verizon and hold that the constitutionality of the substantive provisions of Title II and § 504 is beyond the scope of this appeal.

2. The enforceability of § lS96a(a)(S) under § 1983

Finally, we consider Texas’s assertion that the Eleventh Amendment bars Plaintiffs’ surviving § 1983 claim because the due process provision of the Medicaid statute, § 1396a(a)(3), does not create a federal right enforceable under § 1983. Although couched in terms of sovereign immunity, the State’s argument on this score is entirely devoted to attacking the district court’s ruling that Plaintiffs can state an actionable claim under § 1983 to enforce § 1396a(a)(3). Even more so than Defendants’ constitutional contentions, this argument centers on the merits of Plain *417 tiffs’ § 1983 claim, not their use of Ex parte Young to seek injunctive relief despite the Eleventh Amendment. Moreover, other than their misinterpretation of Doe (which we exposed above), Defendants provide no support for the notion that, to determine the applicability of the Ex parte Young exception, we must review the district court’s conclusion that a § 1983 action can be brought to enforce § 1396a(a)(3). On the contrary, at least one court of appeals has refused to broaden this type of interlocutory appeal to encompass the question whether alleged transgressions of the Medicaid statute can be vindicated under § 1983. See Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 233-34, 238 (1st Cir.2002) (opining that the issue of enforceability under § 1983 was not ripe for review). Similarly, we will confine ourselves to the question whether Plaintiffs have properly demonstrated jurisdiction under Ex parte Yoimg.

D. The applicability of the Ex parte Young exception to Eleventh Amendment immunity

Left to address the simple question whether the district court correctly found that Plaintiffs properly have proceeded under Ex parte Yoimg, we agree with the district court. Plaintiffs allege that Defendants’ failure to admit them to the HCS and CLASS programs violates § 1396a(a)(3), Title II, and § 504. Further, they seek injunctive and declaratory relief.[10] Thus, the “complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.” Verizon, 535 U.S. at 645, 122 S.Ct. 1753 (internal quotation marks omitted). Plaintiffs have therefore satisfied the Supreme Court’s “straightforward inquiry,” and we hold that the Eleventh Amendment does not apply to this suit. See P.R. Aqueduct & Sewer Auth., 506 U.S. at 146, 113 S.Ct. 684 (“Young and its progeny render the [Eleventh] Amendment wholly inapplicable to a certain class of suits.”).

V. Conclusion

Accordingly, we AFFIRM the order of the district court denying that portion of Defendants’ motion to dismiss that relies on the defense of Eleventh Amendment immunity.

. Plaintiffs filed a motion for class certification, which is still pending in the district court.

. We also refer to Defendants collectively as "Texas” or "the State.”

. According to this subsection, a state’s Medicaid plan must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness.” 42 U.S.C. § 1396a(a)(3).

. While the district court did not expressly discuss Defendants' Eleventh Amendment-immunity defense to Plaintiffs’ surviving § 1983 claim (for violation of § l396a(a)(3)), since this claim was not dismissed, the court must have rejected that defense, probably believing that this claim was also permissible under Ex parte Young. On appeal, Defendants do not complain about this omission from the district court’s opinion.

. We refer to the United States as "the government” in this opinion.

. Texas also cites Lewis v. N.M. Dep’t of Health, 94 F.Supp.2d 1217 (D.N.M.2000). There, the court held that an Ex parte Young action could not be maintained under Title II because state officials are not proper defendants under the statute. Id. at 1230. Without engaging in much analysis, the court relied on one circuit court opinion involving state officers sued in their individual capacities, see Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir.1999) (en banc), and several district court decisions. Lewis, 94 F.Supp.2d at 1230. While the Lewis court's judgment was upheld on appeal, the Tenth Circuit did not pass on this holding, since the plaintiffs had dropped their ADA claim. Lewis v. N.M. Dep't of Health, 261 F.3d 970, 975 (10th Cir.2001).

. See Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir.2003) (refusing to “embrace the state defendant's statutory claim that an individual sued in his or her official capacity under the doctrine of Ex parte Young is not a 'public entity' subject to liability” under Title II and explaining that, "[t]he real party in interest in an official-capacity suit is the government entity. As a result, it is irrelevant whether the ADA would impose individual liability on the officer sued; since the suit is in effect against the 'public entity,' it falls within the express authorization of the ADA.” (citation omitted)); Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir.2003) (following "the Sixth, Seventh, and Eighth Circuits in holding that Title II’s statutory language does not prohibit [the plaintiff's] injunctive action against state officials in their official capacities”); Bruggeman, 324 F.3d at 912-13; Carten v. Kent State Univ., 282 F.3d 391, 396-97 (6th Cir.2002) (holding that "an official who violates Title II of the ADA does not represent ‘the state' for purposes of the Eleventh Amendment, yet he or she nevertheless may be held responsible in an official capacity for violating Title II”); Randolph v. Rodgers, 253 F.3d 342, 348 (8th Cir.2001) (citing Garrett’s dictum and refusing to accept the contention that "because the statutory language of the ADA provides only for 'public entity' liability, an Ex parte Young claim against the state officials in their official capacities, premised upon an ADA violation, must fail”).

. Texas, relying on Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), also suggests that Title II’s use of the phrase "public entity” evidences Congressional intent to preclude Ex parie Young actions to enforce the Act. But Seminole Tribe provides no comfort to the State. There, the Court merely explained that, "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Ex parte Young." Id. at 74, 116 S.Ct. 1114 (emphasis added). Here, Plaintiffs do not seek under Ex parie Young any remedies that have been limited by the terms of Title II. In addition, at least two other circuits have specifically rejected arguments, based on Seminole Tribe, that Congress intended to preempt Ex parte Young actions to enforce Title II. See Henrietta D., 331 F.3d at 289 ("In our view, Seminole Tribe does not bar Ex parte Young relief under Title II against a state official in her official capacity. Neither § 504 nor Title II displays any intent by Congress to bar a suit against state officials in their official capacities for injunctive relief, nor does either create a remedial scheme so elaborate that it *415 could be thought to preclude relief under Ex parte Young.")-, Miranda B., 328 F.3d at 1188-89.

. The full sentence from the opinion reads, “We emphasized: ‘[T]o seek redress through § 1983, ... a plaintiff must assert the violation of a federal right, not merely a violation of federal law.’ " Doe, 536 U.S. at 282, 122 S.Ct. 2268 (quoting Blessing v. Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)) (alterations in original) (first emphasis added). Of course, Plaintiffs' Title II and § 504 claims do not arise under § 1983; both Title II and § 504 are enforceable directly through private causes of action. See Barnes v. Gorman, 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002).

. Defendants do not contend that the relief sought by Plaintiffs could have an impermissi-bly retroactive effect.