# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2023

Lyle W. Cayce
Clerk

No. 20-40138
CONSOLIDATED WITH
No. 22-40433

Perry Bonin; Ace Chandler; Michael Manuel; Robert
Acreman; Jacqueline Acreman, *Et al.*,

*Plaintiffs—Appellees*,

*versus*

Sabine River Authority, State of Louisiana,

*Defendant—Appellant*.

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 1:19-cv-527

Before Richman, *Chief Judge*,* and Dennis and Haynes, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

This appeal presents the sole issue of whether the Sabine River Authority, State of Louisiana ("SRA-L") is an "arm of the state" entitled to sovereign immunity under the Eleventh Amendment to the United States

---

*Chief Judge Richman dissents.

No. 20-40138
c/w No. 22-40433

Constitution. After applying our circuit precedent's six-factor test in *Clark v. Tarrant County*, 798 F.2d 736, 744–45 (5th Cir. 1986), we conclude that SRA-L is not an arm of the state. Accordingly, the district court's order denying SRA-L's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction on sovereign immunity grounds is AFFIRMED.

## I.

The "Sabine River Authority, State of Louisiana"("SRA-L") was created, as a conservation and reclamation district lying within the watershed of the Sabine River, by an act of the Louisiana legislature in 1950, *see* La. R.S. 38:2321 et seq. The SRA-L subsequently entered into a joint venture with the Sabine River Authority, Texas ("SRA-T") (collectively "the SRAs"). *See* La. R.S. 38:2329 editors' note (West 2022) (including "Sabine River Compact"); *Stallworth v. McFarland*, 350 F. Supp. 920, 926 (W.D. La. 1972). "The designated purpose of this venture was the creation of a dam and reservoir to provide electrical power, promote industrial development in both States, conserve water for agricultural purposes, and create fishing, recreation, and commercial development." *Stallworth*, 350 F. Supp. at 926.

Plaintiffs are Louisiana and Texas property owners who alleged that the SRAs violated their federal Fifth Amendment constitutional rights. Their complaints allege that the SRAs deliberately released water from the Toledo Bend reservoir into the Sabine River by opening spillway gates to relieve high-water levels in the reservoir during a rain event in March of 2016 and in doing so flooded their properties, causing significant property damage. Plaintiffs further alleged that the opening of the spillway gates was the "last straw" in a years-long pattern of mismanagement of water levels in the reservoir preceding the March 2016 event that contributed to the flooding and its severity, and claim that defendants had knowledge of the severe risk of downstream flooding.

No. 20-40138
c/w No. 22-40433

Plaintiffs filed their lawsuit in federal court under 42 U.S.C. § 1983. SRA-L filed a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, arguing that it was entitled to Eleventh Amendment sovereign immunity as an arm of the state of Louisiana and had not waived that immunity. The district court denied the motion. Applying the *Clark* factors, that district court determined SRA-L was not an arm of the state and therefore was not entitled to Eleventh Amendment sovereign immunity. SRA-L appealed.

## II.

"Denials of motions to dismiss on sovereign immunity grounds fall within the collateral order doctrine, and are thus immediately appealable." *Texas v. Caremark, Inc.*, 584 F.3d 655, 658 (5th Cir. 2009) (citing *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 411–12 (5th Cir. 2004)). Whether an entity is entitled to Eleventh Amendment sovereign immunity is a question of law reviewed *de novo* by the appellate court. *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999). Generally, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). However, there are exceptions. Relevant here, an entity asserting sovereign immunity bears the burden of demonstrating that it is an "arm of the state." *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000); *Cutrer v. Tarrant Cnty. Loc. Workforce Dev. Bd.*, 943 F.3d 265, 270 (5th Cir. 2019), *as revised* (Nov. 25, 2019).

## III.

"The Eleventh Amendment has been interpreted by the Supreme Court to bar suits by individuals against nonconsenting states." *McCarthy* 381 F.3d at 412 (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). Eleventh Amendment sovereign immunity "encompasses not

only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (citations omitted). "[I]dentifying when the state is a real, substantial party in interest is often not an easy task." *Hudson*, 174 F.3d at 681. Among state entities, there is a distinction between "arm[s] of the state" and those entities "possess[ing] an identity sufficiently distinct from that of the State of Louisiana to place it beyond [the Eleventh Amendment's] shield." *Milton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 131 (5th Cir. 1986). The question is "whether the defendant being sued is better described as an arm of the state partaking in the privileges of Eleventh Amendment immunity or whether the defendant is actually part of a political subdivision unprotected by the Eleventh Amendment." *Hudson*, 174 F.3d at 681.

"Whether a particular political entity is an arm of the state is a question of federal law." *Vogt v. Board of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 690 n.4 (5th Cir. 2002). "There is no bright-line test for determining whether a political entity is an 'arm of the state' for purposes of Eleventh Amendment immunity." *Id.* at 689. Rather, we must make a "reasoned judgment" whether the suit is "effectively against the sovereign state" despite the nominal defendant. *Earles v. State Bd. of Certified Public Accountants of La.*, 139 F.3d 1033, 1037 (5th Cir. 1998). "Our analysis must consider the particular nature of the entity, including its powers and duties, the nuances of its organizational structure, and its interrelationship with other organs of the state." *Id.* In this Circuit, we use the six factors from *Clark v. Tarrant County* to guide our analysis. *See* 798 F. 2d at 744–45. *Clark* is one of this Circuit's foundational Eleventh Amendment cases which identified from our case law the factors relevant to determining whether an entity is entitled to Eleventh Amendment immunity. *See Daves v. Dallas*

No. 20-40138
c/w No. 22-40433

*Cnty.*, 22 F.4th 522, 533 (5th Cir. 2022) (en banc) (describing our Eleventh Amendment case law); *Clark*, 798 F. 2d at 744–45. The six *Clark* factors are:

> (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Vogt*, 294 F.3d at 689; *see also Hudson*, 174 F.3d at 681.

"A defendant need not possess each of the above attributes to benefit from the Eleventh Amendment. Nor are these factors necessarily equal to one another." *Hudson*, 174 F.3d at 681–82. "[T]he most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds," *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147–48 (5th Cir. 1991) (quoting *McDonald v. Board of Miss. Levee Comm'rs*, 832 F. 2d 901, 907 (5th Cir. 1987)), while the last two factors "weigh significantly less" in the "balance of equities." *Cozzo v. Tangipahoa Parish* Council, 279 F.3d 273, 281 (5th Cir. 2002). We consider each factor in turn.

## A. Characterization under state law

The first *Clark* factor considers whether state statutes and case law characterize the entity as an arm of the state. The district court found this factor weighed in favor of finding SRA-L an arm of the state. State statute characterizes SRA-L as "an agency and instrumentality of the state of Louisiana required by the public convenience and necessity for the carrying out of the functions of the state." La. R.S. 38:2324(A). Although this classification may suggest that SRA-L is an arm of the state, we have cautioned that the description "creature or agency of the state . . . is far too inclusive to be useful for Eleventh Amendment analysis." *Vogt*, 294 F.3d at

No. 20-40138
c/w No. 22-40433

690. Indeed, in the same sentence, the SRA-L is also characterized as "a corporation and body politic and corporate, with power of perpetual succession, invested with all powers, privileges, rights, and immunities conferred by law upon other corporations of like character including but not limited to port authorities, port commissions, and port, harbor, and terminal districts within the state."[1] La. R.S. 38:2324(A). This inconsistent characterization proves unhelpful in classifying SRA-L. On-point state case law is scarce and sheds no additional light on the question, as the cases also describe the SRA-L's legal status, in dicta, inconsistently. *Compare Slowinski v. England Econ. and Indus. Develop. Dist.*, 828 So. 2d 520, 528 n.7 (La. 2002) ("an instrumentality of the state of Louisiana"), *with Crump v. Sabine River Authority*, 737 So. 2d 720, 722 n.1 (La. 1999) ("a corporation and political subdivision of the State of Louisiana").

SRA-L argues that at some point after its creation as an independent authority, SRA-L was "placed within the Department of Transportation and Development," an executive branch department. La. R.S. 36:509(F)(1). It is true that some of our decisions have "suggest[ed] 'that all Louisiana executive departments have Eleventh Amendment immunity.'" *Vogt*, 294 F.3d at 692 (quoting *Champagne v. Jefferson Par. Sheriff's Off.*, 188 F.3d 312,

---

[1] A brief survey of state statutes related to "port authorities, port commissions, and port, harbor, and terminal districts" reveals that at least some of those entities are referred to as "political subdivision[s] of the state," rather than "agenc[ies] and instrumentalit[ies]" of the state. *See, e.g.*, La. R.S. 34:201 (Lake Charles Harbor and Terminal District); § 34:241 (Port of Iberia District); § 34:1351 (Plaquemines Parish Port Authority). The "political subdivision" designation is typically juxtaposed as opposite an "arm of the state," and the two may even be "mutually exclusive." *See Vogt*, 294 F.3d at 692 (citing La. R.S. 13:5102(B); *Cozzo*, 279 F.3d at 281–82). Although, "this may not be a hard-and-fast rule, virtually every . . . government entity classified as a political subdivision has been denied Eleventh Amendment immunity." *Id.* & n.5 (citation omitted). Thus, if the SRA-L were analogized to a "political subdivision," this factor would weigh against sovereign immunity.

313 (5th Cir. 1999)). However, we have avoided pronouncing similar "hard-and fast rule[s]" in the Eleventh Amendment arm-of-the-state context, as we must "examine the particular entity" at issue. *See id.* (quoting *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997)). Indeed, in finding a similar Louisiana port commission was not an arm of the state, we afforded little weight to its description under Louisiana law as "an executive department of the state" and "agency" of the state. *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 439–40 (5th Cir. 1985). This description under state law was "devoid of any language expressing or implying that this agency status [wa]s sufficiently broad based to make the Commission an 'alter ego' of the state," and the court therefore "decline[d] to afford the Commission . . . immunity under the Eleventh Amendment when it ha[d] simply been described, without more, as an 'agency' of the State." *Id.* at 439. In the present case, SRA-L's belated placement in the executive branch is partly undercut by SRA-L's retention of significant operational autonomy, as the law placing it in the executive branch itself explicitly provided that SRA-L "shall exercise [its] powers, duties, functions, and responsibilities . . . independently of the secretary, the undersecretary, and any assistant secretary." La. R.S. 36:509(F)(1), 801.1(E).

Thus, while the language in the state statutes describing SRA-L as "an agency and instrumentality of the state" and as a member of the executive branch means this factor weighs in favor of finding SRA-L an arm of the state, we also note the factor's limited utility in this case given the inconsistent descriptions in the same statutes and the lack of a more-definitive characterization in either statute or case law.

### B. Source of funding

The second *Clark* factor concerns the entity's source of funds. Because one of the goals of the Eleventh Amendment is to protect state

treasuries, "it is well established that [this factor] is the most important." *Hudson*, 174 F.3d at 687. "In assessing this second factor, we conduct inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state's liability for the defendant's general debts and obligations." *Id.* at 682.

Whether the state is liable for a money judgment against the entity is the "most significant" consideration. *Delahoussaye*, 937 F.2d at 147–48. This first prong of the second *Clark* factor's analysis generally involves review of "a state's statutes regarding indemnification and assumption of debts." *Vogt*, 294 F.3d at 693. SRA-L cites the Louisiana Constitution's command that "[n]o judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." La. Const. art. XII, § 10(C). Under article XII, section 10(C), the legislature pays judgments against a state agency, while a political subdivision pays judgments against itself. *See Newman Marchive P'ship, Inc. v. City of Shreveport*, 979 So. 2d 1262, 1266 (La. 2008); *Vogt*, 294 F.3d at 693. SRA-L presumes it is a state agency such that the state legislature would pay any judgment against it, but as our analysis of the first *Clark* factor makes evident, state law refers to SRA-L as both an "agency and instrumentality of the state" and "a corporation and body politic and corporate," La. R.S. 38:2324(A), including case law that describes SRA-L as a "political subdivision," *Crump*, 737 So. 2d at 722 n.1. There were no jurisdictional facts adduced in the district court as to how payment of judgments against SRA-L actually operates. SRA-L has not met its burden of showing the state is directly liable for judgments against SRA-L.

"The next step is to determine whether the state will indirectly fund a judgment against the levee district because the state either is responsible for general debts and obligations or provides the lion's share of the levee

district's budget." *Vogt*, 294 F.3d at 693. SRA-L appears to have near-total financial independence. "The authority shall operate from self-generated revenues and shall not be a budget unit of the state." La. R.S. 38:2324(B)(1). It "shall establish its own operating budget . . . subject to majority approval of the board of commissioners of the authority," though its "budget shall be submitted to the Joint Legislative Committee on the Budget for review and approval." *Id.* SRA-L "*may* . . . receive state appropriations at any time it is deemed advisable by the legislature, and only the expenditure of such appropriated funds shall be subject to budgetary controls or authority of the division of administration." *Id.* (emphasis added). Importantly, state law mandates that SRA-L pay its own debts from its self-generated revenues: SRA-L "shall have the power . . . [t]o incur debts and borrow money, but no debt so incurred shall be payable from any source other than the revenues to be derived by the authority." *Id.* § 2325(A)(5). In sum, while the legislature has the discretion to appropriate state funds to the SRA-L, the SRA-L is financially autonomous—it generates its own revenues, can incur debts and borrow money, and is obligated to pay its debts out of its own funds, without drawing on state resources.

Given SRA-L's financial independence—in particular SRA-L's liability for its own debts—and absent a showing by SRA-L that the legislature pays judgments against SRA-L, we cannot conclude at this juncture that the state would be liable for a money judgment levied against SRA-L. It seems equally likely that SRA-L self-insures or pays its own judgments out of its own funds. Thus, because SRA-L, as the entity asserting sovereign immunity, bears the burden of demonstrating that it is an "arm of the state," we ultimately weigh this factor against immunity. *See Cutrer*, 943 F.3d at 271-72.

## C. Autonomy

The third *Clark* factor considers the "entity's degree of authority independent from the state." *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 187 (5th Cir. 1986). This factor involves consideration of the entity's "independent management authority" and, to a lesser degree, "the independence of the individual commissioners." *Vogt*, 294 F.3d at 694–95 (quoting and citing *Jacintoport*, 762 F.2d at 442).

The district court found this factor weighed against finding SRA-L an arm of the state, noting that SRA-L "has considerable management authority" given to it by statute, including "the power to 'do all things necessary or convenient to carry out its functions.'" *See* La. R.S. 38:2325(A)(9)). SRA-L also has the power, *inter alia*, to acquire property (§ 2325(A)(2)), enter into contracts (§ 2325(A)(3)), incur debts and borrow money (§ 2325(A)(5)), and even "establish and maintain a law enforcement division within the Authority" (§ 2325(A)(17)). But ultimately SRA-L's powers are in service of its functions of maintaining, conserving, and supervising the dam, reservoir, rivers, and streams within the Sabine River watershed. *See* § 2325.

In response, SRA-L maintains that it is a "budget unit" of the state, and thus subject to executive branch oversight. For support, it cites a 1997 Louisiana Attorney General Opinion. But the SRA-L's statute declares the exact opposite, that it "shall not be a budget unit of the state"; rather, it "shall operate from self-generated revenues" and "shall establish its own operating budget . . . subject to majority approval of the board of commissioners of the authority," though its budget "shall be submitted to the Joint Legislative Committee on the Budget for review and approval." La. R.S. 38:2324(B)(1). Clearly, SRA-L has a high degree of budgetary autonomy.

10

No. 20-40138
c/w No. 22-40433

SRA-L also argues that its independent authority is counterweighted by the governor's role in appointing the board. SRA-L is governed by a thirteen-member board of commissioners appointed by the governor. *Id.* § 2322(A)(1). There are parish residency requirements for board members, but no other limits or qualifications in the statute. *Id.* Most significantly, Board members "shall serve at the pleasure of the governor," though their nominations must be "submitted to the Senate for confirmation." *Id.* § 2322(A)(2). The district court determined that, while board members were "vulnerable" because they served at the pleasure of the governor, the board was still autonomous because the governor's discretion was limited by the statutory requirement that members reside in certain parishes. We disagree.

The district court cited *Vogt v. Board of Commissioners of the Orleans Levee District*, 294 F.3d 684, and *Pendergrass v. Greater New Orleans Expressway Commission*, 144 F.3d 342 (5th Cir. 1998), for support, but both cases are factually distinguishable. In *Vogt*, the governor appointed six of eight levee district commissioners, subject to a requirement that his appointees be residents of the district *and* be recommended by the local legislative delegation. 294 F.3d at 684. In *Pendergrass*, the governor appointed three of five commissioners, subject to similar residency and local recommendation requirements, and further, those appointees served for a set term and not at the governor's pleasure. 144 F.3d at 347. Additionally, the other two members were appointed by local parish governing bodies. *Id.* Here, by contrast, there is no requirement that members be recommended by local legislators or local governing bodies; board members serve solely at the governor's pleasure and not for set terms; and all thirteen board members are gubernatorial appointments, with no board members appointed by local governing bodies.

11

No. 20-40138
c/w No. 22-40433

Considering these circumstances, then, we think this factor weighs minimally against finding SRA-L an arm of the state. On one hand, the entire board is appointed by and serves at the pleasure of the governor; on the other hand, the SRA-L has significant management autonomy. To the degree that independent management authority weighs more heavily in the analysis than the independence of commissioners, this factor tilts against SRA-L being an arm of the state.

### D. Local or statewide focus

The fourth *Clark* factor considers whether the entity is concerned primarily with local, as opposed to statewide, problems—in other words, "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants." *Pendergrass*, 144 F.3d at 347. State law describes SRA-L as a "conservation and reclamation district" that encompasses "all the territory . . . lying within the watershed of the Sabine River and its tributary streams" in six enumerated parishes. La. R.S. 38:2321. Limited territorial boundaries suggest that an entity is not an arm of the state. *Vogt*, 924 F.3d at 695; *Cozzo*, 279 F.3d at 282. Focusing on the SRA-L's territorial limits, the district court found that this factor weighed against finding SRA-L an arm of the state.

But SRA-L argues that its statewide purpose makes it an arm of the state, notwithstanding its territorial jurisdiction. SRA-L points to statutory language that says it is "required by the public convenience and necessity for the carrying out of the functions of the state" and "will be performing an essential public function under the constitution." La. R.S. 38:2324(A), (D). Thus, it argues in its brief that it "serves the important functions of water conservation, water management, hydropower generation, and recreational opportunities which benefits the entire state, not just local inhabitants." For support, it cites *Delahoussaye v. City of New Iberia*, a case involving a state

12

university whose statutory purpose was to serve the higher education needs of people statewide.  937 F.2d at 148.

We think that this factor weighs against finding the SRA-L an arm of the state.  Though SRA-L surely generates some statewide benefits, its activities are localized, and it has a territorial jurisdiction.  In these important respects, SRA-L is distinguishable from a state university that is a part of a system of higher education intended to serve the entire state. *See Vogt*, 924 F.3d at 695-96.

### E. Authority to sue in own name

The fifth *Clark* factor asks whether the entity has authority to sue and be sued in its own name.  According to state law, SRA-L "shall have and possess the authority to sue and be sued."  La. R.S. 38:2324(B)(2).  The district court found this factor weighed against finding SRA-L an arm of the state.  SRA-L does not contest this factor, other than to correctly note that the fifth and sixth *Clark* factors "weigh significantly less" in the analysis. *Cozzo*, 279 F.3d at 281.  We agree that this factor weighs against finding SRA-L an arm of the state, and also that the last two factors are properly afforded less weight than the others.

### F. Right to hold and use property

Last, the sixth *Clark* factor asks whether the entity has the right to hold and use property.  Based on state law, the district court found this factor weighed against finding SRA-L an arm of the state.  La. R.S. 38:2325(A)(2).  SRA-L contends on appeal that this factor weighs in favor of its immunity because state law says it holds property "as an instrumentality of the State of Louisiana."  La. R.S. 38:2325(B).  We disagree.  The same statutory provision also says that "[t]itle to all property acquired by the Authority shall be taken in its corporate name."  *Id.*  In *Vogt*, we rejected an argument that an entity's right to hold property was "limited" because "all of its property

ultimately belong[ed] to the state." 294 F.3d at 696. That argument "misse[d] the point; the relevant question is whether the [entity] has the right to hold property in its own name, and it clearly does," which "points away from Eleventh Amendment immunity." *Id.* The same applies here.

## IV.

To summarize, we find that the first *Clark* factor weighs in favor of sovereign immunity, but only modestly; the remaining five factors weigh against sovereign immunity, to varying degrees. Crucially, the second factor leans against immunity given SRA-L's financial autonomy and because SRA-L failed to carry its burden of establishing that the state would be liable for any judgment rendered against it. The third factor, and especially the fourth, weigh against immunity for the reasons explained above. The fifth and sixth factors also weigh against immunity, but those two factors weigh less in the analysis. That said, the *Clark* factors are only meant to guide the court's analysis, not to be tallied up to generate a mechanical result. Not all the factors need to be present for an entity to be entitled to sovereign immunity, nor are all the factors weighed equally. *Hudson*, 174 F.3d at 681–82.

Based on the forgoing, we conclude that the SRA-L is not an arm of the state and is not entitled to sovereign immunity. The district court's order denying SRA-L's motion to dismiss for lack of subject-matter jurisdiction is AFFIRMED. SRA-L's unopposed motion for supplemental briefing is DENIED.