# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-10660

ROBERT T NELSON

Plaintiff-Appellant

v.

UNIVERSITY OF TEXAS at Dallas; DAVID E DANIEL, as Administrative Head of the University of Texas at Dallas; KAREN M JARRELL, Individually; VIVIAN RUTLEGE, Individually

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CV-1741

Before SMITH and PRADO, Circuit Judges, and YEAKEL, District Judge.[*]

PRADO, Circuit Judge:

In this case, we must decide whether a claim for reinstatement under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54, is sufficient to bring a case within the Ex parte Young exception to Eleventh Amendment sovereign immunity. We conclude that it is and therefore REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

[*] District Judge of the Western District of Texas, sitting by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Robert Nelson ("Nelson") was employed by Defendant-Appellee the University of Texas at Dallas ("UTD") for approximately one year. After being severely injured in a car accident and suffering the suicide of his son, Nelson went on FMLA leave on April 25, 2005. Nelson's doctor informed UTD that Nelson would need intermittent leave for at least four to six weeks in order to fully recover. UTD approved the request for leave, subject to its standard FMLA policies, which require notice of the timing and duration of the leave. On June 7, 2005, and prior to the expiration of the twelve weeks of leave guaranteed by the FMLA, UTD terminated Nelson for absenteeism when he did not call in or report to work for three consecutive days. Despite Nelson's request for reinstatement, UTD refused to reinstate him.

As a result, Nelson filed suit against UTD on August 29, 2005, for violations of the FMLA, seeking both damages and reinstatement. Nelson soon amended his complaint to include FMLA claims against Defendants-Appellees David Daniel ("Daniel") as the administrative head of UTD, Karen Jarrell ("Jarrell"), and Vivian Rutlege ("Rutlege").[1] All of the defendants filed motions to dismiss. The district court granted the motions brought by UTD, Jarrell, and Rutlege, holding that UTD was protected by Eleventh Amendment immunity and that Jarrell and Rutlege were not "employers" under the FMLA. Nelson has not appealed the dismissal of these parties. However, because Nelson sued Daniel in his official capacity, the district court did not grant Daniel's motion to dismiss at that time, given that the motion was premised on a suit against Daniel in his individual capacity.

Daniel then filed a motion to dismiss the suit brought against him in his official capacity on the ground of Eleventh Amendment immunity, which the

---

[1] Daniel is the President of UTD. Jarrell and Rutlege are lower level employees who interacted with Nelson concerning his FMLA leave.

district court granted. The district court ruled that Nelson's request for reinstatement did not fall within the Ex parte Young exception to Eleventh Amendment immunity because Nelson failed to allege a "continuing violation" of federal law. The district court reaffirmed its ruling when it denied Nelson's motion to vacate the judgment. Nelson timely appealed the dismissal of his suit against Daniel.

We have jurisdiction pursuant to 28 U.S.C. § 1291, as a final judgment has been entered. We review rulings on motions to dismiss de novo. Kennedy v. Chase Manhattan Bank USA, N.A., 369 F.3d 833, 839 (5th Cir. 2004).

## II. DISCUSSION

Because Nelson sued Daniel in his official capacity as head of UTD, Nelson's suit is treated as one against the State of Texas which, absent an exception to immunity, is barred by the Eleventh Amendment.[2] See McCarthy ex rel. Travis v. Hawkins, 381 F.3d 407, 412 (5th Cir. 2004) ("[T]he principle of state-sovereign immunity generally precludes actions against state officers in their official capacities . . . ."). To avoid Eleventh Amendment immunity, Nelson relies on the Supreme Court's decision in Ex parte Young, 209 U.S. 123 (1908), which created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities. Thus, the sole question in this appeal is whether Nelson's request for reinstatement is sufficient to invoke the Ex parte Young exception to Eleventh Amendment immunity.

---

[2] The Supreme Court has noted that state sovereign immunity is broader than that described by the Eleventh Amendment; thus, referring to "sovereign immunity" as "Eleventh Amendment immunity" is not always accurate. Alden v. Maine, 527 U.S. 706, 713 (1999). For our purposes, however, there is no need to distinguish between the two, and we will use the terms interchangeably.

A.   The FMLA and Sovereign Immunity

Before reaching the merits of this appeal, we first pause to make clear that Nelson's FMLA claim is, in fact, subject to an Eleventh Amendment immunity defense.   In pertinent part, the FMLA guarantees eligible employees twelve workweeks of leave during any twelve month period for the following reasons:

> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
>
> (B) Because of the placement of a son or daughter with the employee for adoption or foster care.
>
> (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
>
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).[3]   In this case, Nelson claims he was entitled to leave pursuant to subsection D.

This court in Kazmier v. Widmann declared that the Eleventh Amendment immunized states from suits for money damages brought under subsections C and D of § 2612(a)(1).  225 F.3d 519, 526-29 (5th Cir. 2000).  Several years later, however, the Supreme Court ruled that Congress had validly exercised its power under § 5 of the Fourteenth Amendment to abrogate the states' Eleventh Amendment immunity with respect to subsection C by enacting it to combat historic gender discrimination.   Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 735 (2003) (referencing "the States' record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits").  The Court specifically noted evidence that the gender gap regarding leave was due to "the pervasive sex-role stereotype that caring for family

---

[3] Since this case was filed, Congress has added subsection E to § 2612(a)(1), which provides for leave due to exigencies arising from the fact that the spouse, son, daughter, or parents of the employee is on active duty in the Armed Forces.

members is women's work." Id. at 731. Because Hibbs concerned only subsection C of § 2612(a)(1), the Court made no comment on whether Congress validly abrogated sovereign immunity under subsection D.

Since that time, the Sixth, Seventh, and Tenth Circuits have recognized that, despite the ruling in Hibbs, states may still assert an Eleventh Amendment immunity defense to claims brought pursuant to subsection D. Toeller v. Wis. Dep't of Corr., 461 F.3d 871, 877-80 (7th Cir. 2006); Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities, 422 F.3d 392, 400-05 (6th Cir. 2005); Brockman v. Wyo. Dep't of Family Servs., 342 F.3d 1159, 1164-65 (10th Cir. 2003). The rationale behind these decisions is that subsection D, which concerns leave for purposes of self-care as opposed to the care of family members, does not appear to be in response to any nationwide history of gender discrimination that would permit Congress to act under § 5 of the Fourteenth Amendment. See, e.g., Touvell, 422 F.3d at 400-05; Brockman, 342 F.3d at 1164. Therefore, those circuits concluded that Congress lacked the power to legislatively remove the states' immunity under subsection D. Toeller, 461 F.3d at 879-80; Touvell, 422 F.3d at 405; Brockman, 342 F.3d at 1165.

Although neither party to this appeal challenges whether sovereign immunity still protects states from liability for suits brought under subsection D, we agree with the rationale of the Sixth, Seventh, and Tenth Circuits that the Supreme Court's ruling in Hibbs applies only to subsection C. Therefore, this court's decision in Kazmier still remains the law of this circuit with respect to subsection D. Consequently, Daniel may assert the defense of sovereign immunity in Nelson's suit against him in his official capacity under subsection D.

B.    Reinstatement and Ex parte Young

Because the Eleventh Amendment bars suits against states for money damages incurred as a result of violating 29 U.S.C. § 2612(a)(1)(D), we must

dismiss Nelson's claim against Daniel in his official capacity unless Nelson can demonstrate an exception to immunity. As noted above, Nelson relies on the exception to Eleventh Amendment immunity created by the Supreme Court in Ex parte Young, 209 U.S. 123 (1908). Pursuant to the Ex parte Young exception, the Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity. Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 482 (5th Cir. 2008), petition for cert. filed, 76 U.S.L.W. 3611 (U.S. May 5, 2008) (No. 07-1387). Thus, "prospective injunctive or declaratory relief against a state [official] is permitted . . . but retrospective relief in the form of a money judgment in compensation for past wrongs . . . is barred." Brennan v. Stewart, 834 F.2d 1248, 1253 (5th Cir. 1988). Nelson argues that his request for reinstatement is the sort of prospective relief that is permitted by the Ex parte Young doctrine.

As shown by Nelson, this circuit has always treated Ex parte Young as an appropriate vehicle for pursuing reinstatement to a previous job position. In Warnock v. Pecos County, we considered a district court's dismissal of a § 1983 action on the basis of Eleventh Amendment immunity. 88 F.3d 341 (5th Cir. 1996). There, the plaintiff sought damages, reinstatement, and attorneys' fees from two state judges when they failed to reappoint her to a position that she had previously held. Id. at 343. We agreed that the suit for damages was barred by the Eleventh Amendment, but held that the claim for reinstatement could go forward because it was a claim for prospective relief. Id. Specifically, we stated,

> Plaintiff's claim for prospective relief (reinstatement), however, is not barred by sovereign immunity. The Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law. Ex parte Young, 209 U.S. 123, 155-56, 28 S. Ct. 441, 452, 52 L. Ed. 714 (1908); Edelman v. Jordan, 415 U.S. 651, 664, 94 S. Ct. 1347, 1356, 39 L. Ed.2d 662 (1974); Brennan v. Stewart, 834 F.2d 1248, 1252 (5th Cir. 1988).

Id.  Thus, we clearly held that a claim for reinstatement was cognizable under Ex parte Young.

We followed Warnock in Sternadel v. Scott, No. 00-50106, 2001 WL 563628 (5th Cir. May 7, 2001), and held that a motion to dismiss on the basis of Eleventh Amendment immunity should not have been granted when the plaintiff sought the prospective relief of reinstatement.  Id. at *2.  Similarly, in Meekins v. Foster, No. 99-30583, 2000 WL 423356 (5th Cir. Apr. 3, 2000), we noted (and the parties conceded) that reinstatement "would qualify as acceptable injunctive relief" for Ex parte Young purposes.  Id. at *2.

Ours is not the only court to reach such a conclusion, as almost every circuit court has reached the same result.  See State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 96-98 (2d Cir. 2007); Meiners v. Univ. of Kan., 359 F.3d 1222, 1232-33 (10th Cir. 2004); Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002); Carten v. Kent State Univ., 282 F.3d 391, 396 (6th Cir. 2002); Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 840-42 (9th Cir. 1997); Treleven v. Univ. of Minn., 73 F.3d 816, 819 (8th Cir. 1996); Coakley v. Welch, 877 F.2d 304, 307 n.2 (4th Cir. 1989); Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir. 1986).  Therefore, the great weight of case authority clearly supports treating reinstatement as an acceptable form of prospective relief that may be sought through Ex parte Young.

## C.    Daniel's Arguments

In his argument against application of Ex parte Young in this case, Daniel asserts that the doctrine requires more than a simple request for prospective relief.  Rather, relying on recent Supreme Court precedent, Daniel argues that a plaintiff must also allege a "continuing" or "ongoing" violation of federal law before the Ex parte Young exception can be met.

In one of its most recent descriptions of the Ex parte Young doctrine, the Supreme Court said that "a court need only conduct a straightforward inquiry

into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (internal quotation marks omitted and emphasis added). Similarly, the Court has stated that "Young also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985) (emphasis added); see Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996) ("[W]e have often found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'").

In light of these statements, Daniel asserts that Nelson's termination and UTD's refusal to reinstate him do not constitute a "continuing violation" sufficient to sustain a claim under Ex parte Young. In making this argument, Daniel relies upon Supreme Court precedent from employment discrimination cases which hold that termination is a discrete act. See, e.g., Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2169 (2007) (listing termination and refusal to hire as discrete acts); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (same). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" Morgan, 536 U.S. at 110. From this, Daniel concludes that Nelson's termination was a discrete act that presents no continuing violation of federal law, meaning that Ex parte Young is not applicable.

Daniel's position is not unreasonable, but we are confronted with years of caselaw to the contrary. All of the opinions cited above concerning reinstatement and Ex parte Young were issued after the Supreme Court began using the continuing violation language in its opinions. See Green, 474 U.S. at 68 (first use of "continuing violation" language by Supreme Court in 1985); see,

e.g., Rowland, 494 F.3d at 98 (decided in 2007); Warnock, 88 F.3d at 343 (decided in 1996). Further, termination has long been considered a discrete act for employment discrimination purposes. Taylor v. Bunge Corp., 775 F.2d 617, 619 (5th Cir. 1985) (per curiam) (stating that termination is not a "continuing violation" for limitations purposes in an employment discrimination suit); Prophet v. Armco Steel, Inc., 575 F.2d 579, 580 (5th Cir. 1978) (per curiam) (same). Therefore, all of the precedent supporting Daniel's argument was in existence at the time that this court and the other circuits concluded that reinstatement may be pursued through Ex parte Young.

Daniel argues that many of the circuits have simply failed to consider whether a request for reinstatement satisfies the continuing violation requirement. While Daniel is correct that this element is often not mentioned, several circuits have directly addressed the requirement and still concluded that reinstatement may be pursued through Ex parte Young. See Rowland, 494 F.3d at 96-98 (concluding that harm caused by elimination of position was "ongoing" for purposes of Ex parte Young); Carten, 282 F.3d at 396 (deciding that reinstatement was prospective relief designed to end a continuing violation of federal law); Doe, 131 F.3d at 840-42 (same); Coakley, 877 F.2d at 307 n.2 (same).[4] Further, regardless of whether this court explicitly considered the ongoing violation requirement in Warnock, we clearly held that "Plaintiff's claim for . . . [ ]reinstatement[ ] . . . is not barred by sovereign immunity." 88 F.3d at 343. Thus, Warnock is the law of this circuit on that issue and, absent a

---

[4] The Seventh Circuit's decision in Sonnleitner v. York, 304 F.3d 704, 718 (7th Cir. 2002), is not to the contrary. There, the constitutional violation concerned the lack of a hearing prior to a demotion, rather than the demotion itself. Id. Thus, the court concluded that the proper remedy would have been to order that a hearing take place. Id. However, the plaintiff had been permitted to tell his side of the story to his employer, leading the court to decide that there was no ongoing violation of law with respect to the lack of a hearing. Id. Consequently, Sonnleitner did not hold that a demotion is not an ongoing violation of federal law.

Supreme Court or en banc decision, we are bound by its holding. See Foster v. Quarterman, 466 F.3d 359, 367-68 (5th Cir. 2006), cert. denied, 127 S. Ct. 2099 (2007).

Daniel attempts to distinguish Warnock and some of the cases from other circuits by arguing that they concerned the violation of constitutional rights, as opposed to statutory rights like the FMLA, and that constitutional claims are construed more expansively. We consider this to be a distinction without significance. The Supreme Court has never restricted the application of Ex parte Young to cases involving constitutional law. See, e.g., Verizon Md., 535 U.S. at 645-48 (allowing suit under Ex parte Young for alleged violation of Telecommunications Act). Indeed, the doctrine itself refers to violations of "federal law," not "constitutional law." See id. at 645. We, therefore, see no reason to consider unconstitutional terminations differently than terminations in violation of the FMLA for purposes of Ex parte Young.

In sum, we conclude that, based on our precedent and precedent from a majority of the circuits, a request for reinstatement is sufficient to bring a case within the Ex parte Young exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law.[5] Consequently, the district court should not have dismissed Nelson's claim for reinstatement, and we must reverse the district court's judgment and remand for further proceedings.

---

[5] We recognize that this opinion treats terminations as ongoing violations of law with respect to Ex parte Young but not with respect to employment discrimination limitations issues. Such a seeming inconsistency is unusual, but not unprecedented. The Ex parte Young doctrine itself represents a similar paradox—that an unconstitutional action by a state officer may be "state action" for purposes of the Fourteenth Amendment, but not for purposes of the Eleventh Amendment. Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 685 (1982) (plurality opinion).

## III. CONCLUSION

For the foregoing reasons, we hold that Nelson's request for reinstatement is not barred by Eleventh Amendment immunity and that the district court erred in concluding otherwise.

REVERSED and REMANDED.