# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 9, 2013

No. 12-30736

Lyle W. Cayce
Clerk

CANTU SERVICES, INCORPORATED,

Plaintiff - Appellee

v.

RENEE ELLENDER ROBERIE; CURT EYSINK;
KEVIN MONK; JOSEPH BURTON;
JANELL BOSARGE; MARK S. MARTIN,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:12-CV-1292

Before JONES and CLEMENT, Circuit Judges, and KAZEN[*], District Judge.
EDITH H. JONES, Circuit Judge:[**]

This case arises from allegations by Cantu Services, Inc. ("Cantu") that
Renee Roberie, Curt Eysink, Kevin Monk, Joseph Burton, Janell Bosarge, and
Mark Martin (collectively, the "State Officials"); the Louisiana Workforce
Commission (the "Commission"); and Melvin Lee Frazier violated Cantu's rights

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-30736

regarding a contract renewal under the Randolph-Sheppard Act, 20 U.S.C. §§ 107–107(e) (2006) ("Randolph-Sheppard"). Cantu argues that the State Officials, acting in their official capacities, violated its constitutional rights to due process and equal protection. The State Officials filed a motion to dismiss claiming immunity under the Eleventh Amendment, the district court denied their motion, and the State Officials appealed. For the following reasons, we REVERSE and REMAND with instructions to dismiss the official-capacity claims of the State Officials without prejudice under Rule 12(b)(1).

## BACKGROUND

This case concerns the award of a food service contract at Fort Polk in Leesville, Louisiana under Randolph-Sheppard. Randolph-Sheppard was created by Congress to provide employment and broader economic opportunities for blind individuals by directing the United States Department of Education to designate a State Licensing Agency ("SLA") in each state. The SLAs issue licenses to blind individuals for the operation of vending facilities on federal property. Blind individuals are given priority in vendor selection, and a food service company frequently serves as a "teaming partner" to assist the licensed blind vendor for large, complex contracts such as that for Fort Polk. In Louisiana, the SLA is the Commission.

Cantu served as teaming partner for blind vendor Eugene Breaud for the Fort Polk food service contract from 2001 until Breaud's death in early 2011. Cantu fulfilled the contractual obligations on the behalf of the Commission, first without a blind vendor and later with a temporary licensed blind vendor. In anticipation of a new, full contract, the Commission issued a bid announcement stating that it would assist the new licensed blind vendor in interviewing and selecting the teaming partner for the new contract. The Commission selected Frazier as the new licensed blind vendor in August 2011. The Commission invited three potential teaming partners, including Cantu and its competitor

No.  12-30736

Blackstone Consulting, Inc. ("Blackstone"), to give presentations to Frazier and the Commission.

Cantu alleges that Frazier indicated he had selected it as his teaming partner.[1]  The parties agree that the choice of teaming partner was ultimately Frazier's to make, but the State Officials insist that Frazier did not have the authority to select a teaming partner without the Commission's assistance and approval.  Frazier ultimately selected Blackstone.  Cantu sued and successfully sought a temporary restraining order.  Frazier and the State Officials were not allowed to proceed with the contract until the district court dissolved its TRO and denied Cantu's motion for a preliminary injunction.

The United States Government has since entered into the long-term food service contract with Frazier, using Blackstone as the teaming partner.  Cantu has appealed.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction to consider an interlocutory appeal from denial of a motion to dismiss on the basis of Eleventh Amendment immunity.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142, 113 S. Ct. 684, 687 (1993); *Earles v. State Bd. of Certified Pub. Accountants*, 139 F.3d 1033, 1036 (5th Cir. 1998).  We review a district court's ruling on a motion to dismiss *de novo.  Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 (5th Cir. 1992) (citation omitted).  We view "the facts as pled in the light most favorable to the nonmovant." *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (citation omitted).  A complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  The complaint must allege "more than labels and conclusions." *Id*. at 555.

---

[1] This allegation is central to Cantu's breach of contract claims against Frazier, which are not before us on this appeal.

3

No.  12-30736

Cantu asks this court to declare the bidding process unfair and void for violating its equal protection and due process rights, to enjoin the enforcement of the new contract, and thus to require the Commission to hold a new bidding process.

## DISCUSSION

The Eleventh Amendment "generally precludes actions against state officers in their official capacities." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004).  The Supreme Court's decision in *Ex parte Young* created an exception for claims for prospective relief.  209 U.S. 123, 28 S. Ct. 441 (1908).  The *Ex parte Young* doctrine "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Puerto Rico Aqueduct*, 113 S. Ct. at 688.  For *Ex parte Young* to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992).

> [*Ex parte*] *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation.  As we have noted: "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."
>
> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant.  This is true if the relief is expressly denominated

as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else. On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

*Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S. Ct. 2932, 2941 (1986).

The Supreme Court recently explained more succinctly that to avoid an Eleventh Amendment bar by means of *Ex parte Young*, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, ___ U.S. ___, 131 S. Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Pub. Svc. Comm'n.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760 (2002) (internal citation and quotation marks omitted)).

Cantu's amended complaint seeks a judgment "providing injunctive and other equitable relief against [the State Officials], including but not limited to an injunction prohibiting Defendants' preparation for any contract changes and prohibiting Defendants from proceeding with future food service contract[s] without Cantu as the teaming partner." Cantu's complaint, on its face, seeks prospective relief as required under *Ex parte Young*. *See In re Tejas Testing Tech. One*, No. 96-50830, 1998 WL 414018, at \*4 (5th Cir. June 26, 1998) (unpublished) (holding claims "at least on their face" were for prospective relief even where "whether [the] claims [were] truly for prospective declaratory or injunctive relief [was] uncertain").

Despite its facial pleading, the question remains whether Cantu alleged an ongoing federal law violation. Cantu must establish that it has a constitutionally protected interest that was continuing to be infringed by the State officials. A vendor would not normally have a liberty or property interest

in the renewal of its contract. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573-78, 92 S. Ct. 2701, 2707-10 (1972) (holding untenured professor had no liberty or property interest in renewal of his employment contract). But rather than argue that its contract was improperly terminated, or that it was improperly not allowed to bid, Cantu argues that it had a constitutionally protected interest in a fair bidding process for the new contract. The process was unfair, according to Cantu, because the State Officials interfered with its agreement with Frazier and forced Blackstone on Frazier when Blackstone surreptitiously offered a sweet deal to the Commission. We may assume arguendo that this constitutes a sufficient pleading of a federal law violation.

Cantu is also required to show, however, that the allegedly unconstitutional bidding process was not a "one-time, past event" but an ongoing violation. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 510 (6th Cir. 2008). Cantu relies on this court's decision in *Nelson v. University of Texas at Dallas*, 535 F.3d 318, 323 (5th Cir. 2008), and contends that the harm was ongoing for the purposes of *Ex parte Young*. In *Nelson* we noted the validity of arguments that employment termination is a discrete, not ongoing, act but felt bound by our decision in *Warnock v. Pecos County, Texas* holding that a request for reinstatement of employment was cognizable under *Ex parte Young*. *Nelson*, 535 F.3d at 323–24 (*citing Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)). The special considerations surrounding public employment, and the holding in *Warnock*, are not binding in this case concerning the different situation of an award process for a public contract. The award process terminated with the issuance of a new contract. Moreover, the "right" to be a teaming partner did not confer on Cantu the right to enter into the Fort Polk contract. Consequently, there is no ongoing violation of law remediable by prospective relief under *Ex parte Young*. Cantu is unable to point to any

No. 12-30736

"disappointed bidder" cases extending the holding of *Nelson*. We will not so extend *Ex parte Young* here.

**CONCLUSION**

For these reasons, we REVERSE and REMAND with instructions for the district court to dismiss the official-capacity[2] claims without prejudice under Federal Rules of Civil Procedure 12(b)(1).[3]

---

[2] Because the district court has not yet ruled on Cantu's claims against the State Officials in their personal capacities, those individual-capacity claims are not before us in this appeal.

[3] Generally, this court has treated dismissals based on state sovereign immunity as jurisdictional under Fed. Rule Civ. Proc. 12(b)(1) *See, e.g. Warnock*, 88 F.3d at 343. Like the Supreme Court itself, however, we recognize the uniquely ambiguous character of Eleventh Amendment immunity. *See Union Pac. R.Co. v. La. Pub. Svc. Comm.*, 662 F.3d 336,340 (5th Cir. 2011)(noting that "Eleventh Amendment immunity operates like a jurisdictional bar," but "may be waived by the state"); *see also* 13 C. WRIGHT & A. MILLER, Fed. Prac. & Proc. § 3524.1 (3d ed.).