CADY, Chief Justice
(dissenting).
I respectfully dissent. The proposition to support the judgment entered against the State, despite its cloak of immunity granted by the Eleventh Amendment to the United States Constitution, was not raised by the plaintiff until after the appeal. It is a fundamental principle in our civil system of justice that claims and defenses cannot be raised by a party for the first time on, or after, appeal and used to justify and support the final judgment. This principle has been ignored in this case, and our justice system has failed to deliver on one of its most basic promises— procedural fairness.
Lee brought this lawsuit under the Federal Family and Medical Leave Act (FMLA). She identified the State of Iowa and the Polk County Clerk of Court as defendants. She claimed her rights as a state employee under the FMLA self-care provision were denied by the State, and she was subjected to wrongful and retaliatory termination for exercising her FMLA rights. The State admitted in its answer to the petition that the Polk County Clerk *685 of Court was an office within the judicial branch of government and was a part of the State of Iowa. Lee admitted the same, and the case proceeded against the State with the parties treating the Clerk of Court as the State.
The State raised an affirmative defense in its answer. It claimed it was immune from the lawsuit under the Eleventh Amendment to the United States Constitution. It subsequently moved for summary judgment based on the single contention that the State and all of its components were immune from the lawsuit. Lee resisted the claim of immunity by asserting two arguments. First, Lee averred the State had no immunity against FMLA lawsuits because Congress abrogated the State’s immunity when it enacted the FMLA. Second, Lee argued that even if Congress did not abrogate its immunity, the State waived immunity by adopting the FMLA provisions as employee policies of the judicial branch.[8] Within the framework of these arguments, the parties vigorously litigated the issue of whether the lawsuit was required to be dismissed because the State was immune.
The district court agreed with the arguments asserted by Lee and denied summary judgment. The case proceeded to trial. At trial, Lee made claims for lost wages and benefits, reinstatement of employment, front pay, and other relief under the FMLA. She argued the jury should decide all such issues. The district court, however, only submitted the issues of lost wages and benefits to the jury, along with liability, and informed the jury it would separately consider the issues of reinstatement and front pay.
’ The jury returned a verdict for Lee in the amount of the stipulated past wages of $165,122. It found the State violated the FMLA. Lee then asked the court for reinstatement and front pay, as permitted under the FMLA. The district court ordered reinstatement and entered judgment for weekly front pay until Lee actually returned to her job. As a part of the post-trial proceedings, the State moved for a judgment notwithstanding the verdict based on its claim of immunity. In response, Lee again argued that Congress abrogated states immunity in enacting the FMLA, and alternatively, immunity was waived by the State through its actions in implementing provisions of the FMLA. No new arguments were made. The district court denied the motion, and the State appealed. The judgment was stayed during the appeal on the condition the State would pay the running weekly front pay in the event the reinstatement was upheld.
On appeal, the State claimed the district court erred in failing to recognize its immunity. Lee again claimed this immunity was abrogated by Congress when it enacted the FMLA and, alternatively, argued the State waived immunity by incorporating the FMLA into its employment policies. Again, no new arguments or claims were made.
Ultimately, we recognized the Supreme Court’s holding that Congress did not abrogate the State’s immunity in enacting the FMLA self-care provision, and the State did not otherwise waive its immunity by incorporating FMLA provisions into its employment policies. Lee v. State (Lee I), 815 N.W.2d 731, 740, 743 (Iowa 2012); see also Coleman v. Ct. of Appeals of Md., 566 U.S.-,-, 132 S.Ct. 1327, 1338, 182 *686 L.Ed.2d 296, 806-07 (2012) (plurality opinion). In other words, the State was successful in its appeal on all issues. If litigation is about winning and losing, the State won. They won on all claims. We remanded the case to the district court to determine “what relief granted in its judgment is still available to Lee within the framework of this lawsuit.” Lee I, 815 N.W.2d at 743.
On remand, the district court found the reinstatement order and front pay judgment were not covered by the state’s immunity. It made this determination by declaring the lawsuit by Lee was, from the beginning, actually one against a public official of the State to enforce rights under federal law, and this type of claim fell outside the cloak of immunity granted to the State. See Ex parte Young, 209 U.S. 128, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714, 727 (1908). In other words, the State lost. The Ex parte Young doctrine was recognized by the district court to create an exception to the State’s immunity under the Eleventh Amendment in Iowa in actions brought in state court.
This second appeal from the decision by the district court now recognizes and adopts the Ex parte Young doctrine as an exception to the immunity granted to states under the Eleventh Amendment that otherwise protects states from claims in state court to enforce federal law. I agree with this substantive legal principle. The benefits and protections of federal law should apply to employees of the State of Iowa in the same way they apply to private employees in Iowa. Moreover, employees of the state must be able to sue public officials to enforce federal law when they fail to do so. Finally, when a public officer fails to follow federal law in her official capacity, the state’s immunity should not apply. This is all sound law. In fact, we sua sponte raised the Ex parte Young doctrine in Lee I to illustrate how state workers can enforce FMLA self-care provision rights despite the state’s immunity from damage claims. See Lee I, 815 N.W.2d at 743.
Notwithstanding, our legal system does not just revolve around substantive principles of law. There is an equally important procedural law that guides the legal process itself.
Lee did, in fact, sue the Polk County Clerk of Court. The Ex parte Young doctrine does, in fact, recognize that a lawsuit for prospective injunctive relief against a public official acting in his or her official capacity is an exception to the state’s immunity. Edelman v. Jordan, 415 U.S. 651, 676-77, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662, 680 (1974). These are the two propositions to support the holding in this appeal that Lee’s lawsuit was, therefore, not subject to the State’s immunity. See Verizon Md., Inc. v. Pub. Serv. Comm’n, 535 U.S. 635, 645, 122 S.Ct. 1753, 1760, 152 L.Ed.2d 871, 882 (2002) (“In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a ‘straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.’ ” (quoting Idaho v. Coeur d’Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028, 2047, 138 L.Ed.2d 438, 465 (1997) (O’Connor, J., concurring in part and concurring in judgment))). As a theory of logic, this conclusion follows perfectly from its two propositions. However, the legal process is not simply a product of theoretical syllogisms. It requires a process that is fair. This procedural fairness lies at the core of the entire American legal system and helps explain its strength and success.
*687 In this case, procedural fairness has been ignored. The party who won its lengthy and hard-fought appeal — the State — has now lost. The State has not only lost, but it can now see for the first time it never had any chance of winning from the beginning, unless its lawyers would have done what has never been required of lawyers in the past. The only way the State could have succeeded on its claim of immunity in this case was to affirmatively make the argument for Lee when it moved for summary judgment that the petition she filed implicated the Ex -parte Young doctrine and that this doctrine should be recognized as an exception to states’ immunity, but not in this case.
In its best light, this case now holds that a defendant who raises a legal defense to a lawsuit must not only establish the proposition defining the defense, it must affirmatively disprove all possible exceptions to the defense, including those never urged or even recognized by the plaintiff, even those never before recognized in the prior cases of this court. Conversely, the holding means the plaintiff does not need to identify the reasons a defense asserted by the defendant is invalid until a court rules the defense has been proven and all appellate review has been exhausted.
This holding is contrary to our system of advocacy and requires a litigant to be an advocate against itself. In turn, it now requires a lawyer to flesh out the arguments for the opposing party and make a case against his or her own client. Few other holdings could be as fundamentally antithetical to the foundational principles of practice.
The State clearly had the duty to establish its defense of immunity. However, that duty should not require the State to disprove any particular exception to the immunity, at least not until the particular exception was placed into issue by Lee. Under our law, when the State raises the defense of immunity under the Eleventh Amendment, an employee asserting the wrongful-termination claim must demonstrate an exception to the immunity. See Nelson v. Univ. of Texas, 535 F.3d 318, 321 (5th Cir.2008) (indicating a wrongful-termination lawsuit against a public officer acting in his official capacity was required to be dismissed unless the plaintiff could “demonstrate an exception” to the state’s immunity).
The immunity doctrine granted to the states under our United States Constitution is applicable to the FMLA self-care provision. Coleman, 566 U.S. at-, 132 S.Ct. at 1338, 182 L.Ed.2d at 306-07. The doctrine means the State of Iowa is, in fact, immune from FMLA self-care provision claims, Lee I, 815 N.W.2d at 743, and this immunity extends to actions by state officers acting in their official capacities, McCarthy ex rel. Travis v. Hawkins, 381 F.3d 407, 412 (5th Cir.2004) (“[T]he principle of state-sovereign immunity generally precludes actions against state officers in their official capacities.... ” (citing Edel-man, 415 U.S. at 663-69, 94 S.Ct. at 1355-58, 39 L.Ed.2d at 672-76)). The state’s immunity, however, is not absolute, but is subject to several exceptions. Alden v. Maine, 527 U.S. 706, 755-57, 119 S.Ct. 2240, 2266-67, 144 L.Ed.2d 636, 678-80 (1999). The Ex parte Young doctrine is one exception that has been recognized in the federal courts for over a century, and it applies to lawsuits against state officials for prospective injunctive or declaratory relief that is designed to remedy an ongoing violation of federal law. See Ex parte Young, 209 U.S. at 157, 28 S.Ct. at 453, 52 L.Ed. at 728. The rationale for this exception is that a state officer who violates federal law is stripped of his official character and loses the cloak of state immunity. Coeur d’Alene Tribe, 521 U.S. at 288, *688 117 S.Ct. at 2043, 138 L.Ed.2d at 460 (O’Connor, J., concurring in part and concurring in judgment); see Ex parte Young, 209 U.S. at 159-60, 28 S.Ct. at 454, 52 L.Ed. at 729.
In this case, of course, Lee did not raise or ai-gue the Ex parte Young exception. Instead, she argued two other exceptions. This is an undeniable fact. It is a basic rule of appellate law that arguments not raised in the trial court “cannot be raised for the first time on appeal.” Airport Comm’n v. Schade, 257 N.W.2d 500, 503 (Iowa 1977); see also Minor v. State, 819 N.W.2d 383, 406 (Iowa 2012) (declining to consider an argument made for the first time on appeal); Ellcader Prod. Credit Ass’n v. Eulberg, 251 N.W.2d 234, 237 (Iowa 1977) (holding an appellant cannot assert a defense under one statute at trial and use a different statute to support the defense on appeal). This rule has existed almost from the beginning of our court system. See Davis v. Nolan, 49 Iowa 683, 686-87 (1878). We emphasized our strong commitment to this rule in DeVoss v. State, 648 N.W.2d 56, 60-63 (Iowa 2002). We also emphasized that the rule exists to promote fundamental fairness and prevent “ambush” on appeal. Id. at 63; see also State v. Tobin, 333 N.W.2d 842, 844 (Iowa 1983) (“[T]he requirement of error preservation gives opposing counsel notice and an opportunity to be heard on the issue and a chance to take proper corrective measures or pursue alternatives in the event of an adverse ruling.”).
The result of this case could not be more unfair to the State. If the State knew the court would change course in this case and consider Lee’s claim to be one under the Ex parte Young doctrine after the appeal was completed, it would have never implicitly assumed liability for the running front pay. It would have been illogical for the State to imply such a promise because it would have been required to make good on its promise even if it won the appeal. It is unfair to now tag the State with a judgment it never knew existed. We have been inconsistent in the past in the application of our preservation-of-error doctrine, but never when it has blindsided one of the parties by imposing such unfair consequences.
As with all parties to litigation, the State had a right to expect that it did not need to articulate a winning argument for the plaintiff. It also had a right to expect that our fundamental rules of advocacy requiring parties to make their own arguments would be followed. It also had a right to expect our most basic rules of appellate practice that foreclose new arguments on appeal would be followed.
Finally, even if Lee should now be permitted to redefine her lawsuit following the appeal, the judgment entered against the State is required to be reversed because it is tainted by legal error. If Lee’s lawsuit was, in fact, one against a public official acting in her official capacity under the docti'ine of Ex parte Young, then it should have only proceeded under a process consistent with that claim. It clearly did not. The process provided under Ex parte Young only entitled Lee to proceed against the individual public official, and the prospective claim should only be tried to the court. Cf. Parsons v. Bedford, Breedlove & Robeson, 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732, 737 (1830) (noting the Seventh Amendment to the United States Constitution only guarantees a right to a jury trial in “suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered”).
Instead, this claim proceeded within our jury process with the State as the target defendant (the clerk of court was never *689 even identified by name) and liability (violation of the FMLA) was determined by the jury within a body of evidence introduced at trial to support monetary relief against the State. This entire process was erroneous and extremely prejudicial to the State because the State had a right to be dismissed from the lawsuit from the beginning.[9] The jury should not have considered liability against the State, and the entire claim should be considered without a jury. Cf. Parsons, 28 U.S. at 447, 7 L.Ed. at 737. This error was prejudicial to the State, and this prejudice now prevents the original judgment from being substituted on remand to support the judgment under Ex parte Young.
Justice can only be achieved if the process is fair. The process was not fair in this case, and injustice has resulted.
WIGGINS, J., joins this dissent.

. More specifically, Lee claimed the State waived its immunity by placing the FMLA provisions in its handbook and on workplace posters. She also asserted the State waived its immunity by failing to tell its employees that it was retaining its immunity. Finally, Lee claimed the State waived its immunity by implementing the FMLA provisions.

. Importantly, an Ex parte Young lawsuit proceeds only against an individual public official. See Kentucky v. Graham, 473 U.S. 159, 166-67 & n. 14, 105 S.Ct. 3099, 3105-06 & n. 14, 87 L.Ed.2d 114, 122 & n. 14 (1985) (noting that "official-capacity actions are not treated as actions against the State”). To be sure, an official-capacity action "is no different from a suit against the State itself.” Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45, 58 (1989). However, in what is only truly a "fiction,” Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 114 n. 25, 104 S.Ct. 900, 915 n. 25, 79 L.Ed.2d 67, 87 n. 25 (1984), the State loses its cloak of immunity only if the individual public official is found to be violating federal law while in his or her official capacity, see Va. Office for Prot. & Advocacy v. Stewart, 563 U.S.-,-, 131 S.Ct. 1632, 1638, 179 L.Ed.2d 675, 686 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.”); see also Graham, 473 U.S. at 167, 105 S.Ct. at 3106, 87 L.Ed.2d at 122-23 (noting that the public official does not have recourse to "personal immunity defenses” like absolute or qualified immunity, and that "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment”). Nevertheless, in such an action, only reinstatement or other prospective relief can be granted. See Nelson, 535 F.3d at 323; see also Edelman, 415 U.S. at 677, 94 S.Ct. at 1362, 39 L.Ed.2d at 680. Accordingly, leaving the State as a named party to the suit- — and leaving before the jury the State’s " 'virtually unlimited ability ... to pay the verdict,' ” cf. Steinhardt v. Potter, 326 F.Supp.2d 449, 451 (S.D.N.Y.2004) (quoting Lehman v. Nakshian, 453 U.S. 156, 161 n. 8, 101 S.Ct. 2698, 2702 n. 8, 69 L.Ed.2d 548, 554 n. 8 (1981)) — prejudiced the State.