## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 14-20278

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2015

Lyle W. Cayce
Clerk

TAMMY BRYANT,

      Plaintiff - Appellee

v.

TEXAS DEPARTMENT OF AGING AND DISABILITY SERVICES; KIM
LITTLETON,

      Defendants - Appellants

———————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

      Tammy Bryant filed suit against her employer, the Texas Department of
Aging and Disability Services ("Department"), and supervisor, Kim Littleton,
in her individual capacity, claiming violations of the Family and Medical Leave
Act ("FMLA"). The defendants filed a motion for summary judgment on the
bases of sovereign and qualified immunity. The district court denied the
motion in full. We conclude that the Department is entitled to sovereign
immunity on Bryant's self-care claims and that Littleton is entitled to qualified
immunity on Bryant's interference claims. We REVERSE and REMAND.

No. 14-20278

FACTUAL AND PROCEDURAL BACKGROUND

Tammy Bryant was hired by the Department in May 2008 to serve as an Assistant Residence Director at the Brenham State Supported Living Center. The Brenham Center is home to several hundred individuals with intellectual and developmental disabilities. Bryant was initially assigned to the facility's Driscoll Gardens Unit, but was reassigned to the Childress Terrace Unit in January 2009. Bryant was promoted to the unit's Residence Director position in September 2010, at which time she assumed primary responsibility for the Childress unit. Littleton also became the Brenham Center's Assistant Director of Programs and, as such, Bryant's immediate supervisor.

This case involves two separate leave periods taken under the FMLA. Bryant first took leave, starting on October 5, 2010, under the FMLA's family-care provision to care for her husband, who had undergone surgery. Bryant alleges that during her time off, Littleton called her between three and ten times to discuss work-related matters. She was unable to recall the specifics of these calls, except that they once discussed whom to hire for the Assistant Residence Director position. Bryant estimates that each of the calls lasted between five and thirty minutes.

Bryant returned to work on November 15, approximately six weeks later. She asserts that she had never previously received any negative reviews, reprimands, or counseling regarding her work performance. But after she returned, Littleton allegedly began retaliating against her for taking leave by issuing various negative reviews and reprimands.

On December 31, Littleton issued Bryant a written "First-Level Reminder," identifying two separate incidents of concern. First, Bryant failed to follow Littleton's instruction to have a resident's wheelchair immediately repaired. Second, Bryant sent an e-mail directly to other departments without first receiving Littleton's approval. That same day, Littleton reassigned

2

No. 14-20278

Bryant to serve as the Driscoll Residence Director. The move was explained as an opportunity for Bryant to gain knowledge about being a Residence Director at a "fairly sound unit" with which she was already familiar.

Soon thereafter, Bryant informed Littleton that she had high blood pressure and had suffered a mini-stroke. According to Bryant, those conditions required her to miss multiple days of work between December and February. Bryant asserts that, despite knowing the cause of her absences, Littleton issued her a counseling letter on February 18 based, in part, on her attendance. The letter also included concerns about Bryant's practice of logging overtime hours without prior approval.

Sometime in February, Bryant started suffering from severe depression and panic attacks. According to Bryant, her doctor, Dr. Drell, recommended that she take two months off from work. When Bryant reviewed the FMLA paperwork that Dr. Drell completed, she believed he had mistakenly noted that she would only be off for one month. Because Dr. Drell had told her that she would actually need to be off for two months, Bryant altered the return date on the FMLA paperwork to read "6/28/2011" instead of "5/28/2011" before giving it to Littleton.

Littleton submitted the paperwork to the Time, Labor, and Leave staff. The staff requested that Littleton discuss the altered date with Bryant. At some point, Dr. Drell faxed the original paperwork, which showed a return date of May 28. Robert Ham, Littleton's supervisor, referred the case to the Texas Health and Human Service ("HHS") Commission's Office of the Inspector General ("OIG") for further review. The OIG then instructed Littleton to contact Bryant to schedule an interview. Littleton called Bryant and asked her to come to work for a meeting regarding an "investigation." She did not disclose any details about the meeting. Bryant refused. As a result, an OIG investigator went to Bryant's house that same day, but Bryant refused to

3

answer any questions.  The OIG eventually determined that the evidence could support a case of criminal forgery against Bryant and referred the matter to the appropriate district attorney.  Bryant explains that the additional worry caused by the OIG investigation exacerbated her stress and panic attacks and required extending her leave through July 10.

A few weeks after Bryant returned, Littleton issued Bryant a "Notice of Possible Disciplinary Action" because of her "continued failure to obey the work rules of the agency, perform [her] job duties and meet HHS standards for job performance, and follow job-related instructions from HHS supervisors." Bryant was terminated on August 8.

Following her termination, Bryant filed this FMLA suit, raising both "interference" and "retaliation" claims.  First, Bryant alleges that the defendants interfered with her leave by "reassigning [her] when she []returned from leave, calling her at home with work related issues, and sending an investigator to her home to threaten criminal prosecution, while she was on protected FMLA leave."  Second, Bryant claims that the defendants unlawfully retaliated against her for taking leave.  She claims to have "suffered adverse employment actions, including but not limited to, being reassigned to a different unit, receiving various disciplinary actions after taking protected leave, harassment while on protected leave, and the termination of her employment because she exercised her rights under the FMLA."  Bryant seeks an unspecified amount of damages and reinstatement.

The defendants moved for summary judgment. The district court denied the motion, holding that a genuine dispute of material fact existed concerning the reason for Bryant's discipline and termination.  Further, the court held that Littleton was not entitled to qualified immunity.  It also determined that sovereign immunity did not apply because "the plaintiff seeks reinstatement, relief that escapes Eleventh Amendment preclusion."  Finally, the court held

No. 14-20278

that Bryant's interference claim "does not require resolution at this time" but noted that the "evidence of interference . . . reaches the threshold for a separate basis of recovery . . . ."  The defendants filed this interlocutory appeal.

## DISCUSSION

The FMLA allows eligible employees to take up to twelve weeks of leave in any one-year period to address a family member's or the employee's own serious health condition.  29 U.S.C. § 2612(a)(1)(C), (D).  Leave taken under the FMLA to care for a family member is often labeled "family-care" leave; leave taken to address an employee's own health condition is frequently referred to as "self-care" leave.  *See Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1332 (2012).  Bryant's claims relate to both types of leave.

Employers subject to the FMLA must comply with two separate "prohibited acts" provisions found in Section 2615(a).  Section 2615(a)(1) provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  Section 2615(a)(2) provides: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

This court has, at times, classified claims brought under Section 2615(a)(1) as "prescriptive" and claims brought under 2615(a)(2) as "proscriptive." *See Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 n. 2 (5th Cir. 2013) (Elrod, J., concurring) (collecting cases).  At other times, this court has labeled the claims "interference" and "retaliation" claims.  *See id.*  Bryant adopts the interference and retaliation labels.  We will do the same.

Though there is no final judgment in this case, the collateral order doctrine provides jurisdiction to hear an interlocutory appeal of an order denying a claim of Eleventh Amendment immunity.  *See Puerto Rico Aqueduct*

No. 14-20278

*& Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993). We review such a denial *de novo*. *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted). This court also has jurisdiction under the collateral order doctrine to review a district court's denial of a motion for summary judgment on the basis of qualified immunity, to the extent that the denial turns on a matter of law. *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (citation omitted). We review that denial *de novo* as well. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (citation omitted).

On appeal, the Department and Littleton argue that sovereign immunity requires that the self-care claims against both defendants be dismissed, and that qualified immunity bars many of the claims against Littleton.

## I.    *Sovereign immunity as to Bryant's self-care claims*

Federal courts lack jurisdiction "over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (citations omitted). Congress has validly abrogated states' sovereign immunity with respect to the FMLA's family-care provision. *Nev. Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 735 (2003). It has not done so with respect to the statute's self-care provision; thus states may still assert an Eleventh Amendment immunity defense against claims based on that provision. *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 321 (5th Cir. 2008).

Despite this caselaw, the district court determined that sovereign immunity did not bar the self-care claim when a plaintiff seeks "reinstatement, relief that escapes Eleventh Amendment preclusion." On appeal, Bryant argues that her claim for reinstatement is an acceptable form of prospective relief against the state that is not barred by the Eleventh Amendment. We

6

No. 14-20278

disagree, as the *Ex parte Young* exception on which Bryant relies does not apply to suits against state agencies; this narrow exception is limited to certain claims against state employees acting in their official capacities. *See Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (discussing *Ex parte Young,* 209 U.S. 123, 155–56 (1908)).

Bryant's self-care claims against the Department are barred by sovereign immunity under *Nelson*. When the Eleventh Amendment applies, courts lack subject-matter jurisdiction over the claim. *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999). Thus, the district court did not have jurisdiction over either Bryant's interference or retaliation claims against the Department to the extent that they relate to her self-care leave.

## II.    *Qualified immunity for Littleton on Bryant's interference claims*

The defendants claim that Littleton is entitled to qualified immunity on some of Bryant's claims. At oral argument, counsel conceded the retaliation claims are not barred but insisted that immunity bars the interference claims.

Interference claims are brought under Section 2615(a)(1): "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."    In her complaint, Bryant provides three separate examples of interference: (1) her reassignment after returning from family-care leave, (2) Littleton's phone calls while she was on family-care and self-care leave, and (3) the OIG investigator's interview at her home. The district court determined that "whether the plaintiff establishes a stand-alone claim for interference with her FMLA leave is an issue that does not require resolution at this time." The court then found "that the evidence of interference, while it reaches the threshold for a separate basis of recovery, nevertheless, supports the plaintiff's claim that something

7

was 'amiss' in how her FMLA leave and employment were handled by the defendants."

Generally, government officials are "immune from civil damages if their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004) (citations omitted). A defense of qualified immunity is analyzed in two parts. "First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly established right." *Id.* (citation omitted). Second, a "court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident." *Id.* (citation omitted). "Courts may address these two elements in either order, and need not proceed to the second where the first is resolved in the negative." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (citation omitted).

One of Bryant's claims is that her reassignment amounts to interference under Section 2615(a)(1). To succeed on such a claim, a plaintiff "must at least show that [the defendant] interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *Cuellar*, 731 F.3d at 347 (citation omitted). Bryant was reassigned approximately six weeks after returning from family-care leave. Bryant took all of the family-care leave to which she was entitled. Accordingly, she has not shown that this post-leave reassignment interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights. She has thus failed to show that the reassignment violated a clearly established right and Littleton is entitled to qualified immunity on this interference claim.

No. 14-20278

Bryant also claims her reassignment amounted to retaliation under Section 2615(a)(2).[1] The merits of that claim are not before us.

Bryant's claim that Littleton interfered with her by sending an OIG investigator to her house is also insufficient. Littleton did not have any control over the OIG investigation. The OIG, acting independently, made the decision to send an investigator to Bryant's home after she refused Littleton's request to come to the office. Thus, Littleton is entitled to qualified immunity with respect to the OIG incident.

This leaves only Bryant's claim that Littleton interfered with her leave by calling her with work-related matters during both leave periods. The defendants assert that Littleton is entitled to qualified immunity on this claim for several reasons. First, a limited number of phone calls cannot reasonably be considered as interfering with an employee's FMLA leave, and there was thus no violation of a clearly established right. Second, Bryant has failed to show prejudice. Finally, no clearly established law prevented Littleton from occasionally calling Bryant while on leave.

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citation omitted). Bryant has not cited to a single judicial opinion holding that employees on

---

[1] This case exemplifies the difficulty of using the "interference" and "retaliation" labels. While these "labels have utility – particularly in the context of the individual cases in which they appear – it is difficult to distinguish FMLA claims based on these terms alone." *Cuellar*, 731 F.3d at 349 (Elrod, J., concurring). Regardless of the labels, the critical inquiry is "whether [the claim] arises from the deprivation of an [employee's] FMLA entitlement or from punishment exacted for her exercise of an FMLA right." *Id.* at 351. The former claim should be brought under Section 2615(a)(1) and the latter under Section 2615(a)(2). Here, qualified immunity extends to Bryant's claim under Section 2615(a)(1) because the post-leave reassignment did not deprive her of an FMLA entitlement.

No. 14-20278

FMLA leave have a right to be free from phone calls. Thus, Littleton is entitled to qualified immunity on Bryant's remaining interference claim.

On appeal, Bryant makes no argument that the Department is liable for interference. We have already determined that the Department is entitled to sovereign immunity on any interference claims relating to Bryant's self-care leave, but that form of immunity does not bar claims relating to family-care leave. The district court did not address an interference claim against the Department, and the issue has not been raised on appeal. Consequently, no issue of the Department's liability for interference is before us.

## III. Sovereign immunity for Littleton

The defendants next argue that because sovereign immunity bars Bryant's self-care claims against the Department, the self-care claims against Littleton are similarly barred. That argument depends on the state's being the real party in interest. Although a plaintiff may in some circumstances obtain damages from a state officer in his individual capacity for violating federal law even when the state is immune, that avenue of relief is closed when "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (citations and internal quotation marks omitted).

The defendants contend that this court has issued two conflicting opinions addressing this issue. In one, we stated in a footnote that sovereign immunity precluded a personal-capacity damages claim filed against state officials. *See Kazmier v. Widmann*, 225 F.3d 519, 533 n.65 (5th Cir. 2000), *abrogated in part on other grounds by Hibbs*, 538 U.S. 721. This court later limited *Kazmier* to its facts and said that in some circumstances, sovereign immunity would not bar relief against officials. *Modica v. Taylor*, 465 F.3d 174, 183–87 (5th Cir. 2006). The defendants contend that these decisions

10

cannot be reconciled and that under this court's rule of orderliness, we are bound by the earlier *Kazmier* decision.

The defendants raise the possibility of sovereign immunity as a bar to the claims against Bryant for violations of self-care rights for the first time on appeal.  The district court therefore did not have an opportunity to rule on the defense.  We recognize this court has held that an argument of Eleventh Amendment immunity may be made at any time, even on appeal.  *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 342 (5th Cir. 2011).  Nevertheless, we decline to exercise our discretion to address this argument.  We leave it for the district court to address on remand.

The defendants also argue for the first time on appeal that reassignment does not constitute an adverse employment action.  They have waived review of this issue by failing to raise it in the district court.  *See Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 262 (5th Cir. 2009).

The Department is entitled to sovereign immunity on Bryant's self-care claims; we REVERSE the district court's denial of sovereign immunity on those claims.  Littleton is entitled to qualified immunity on Bryant's interference claims, and we REVERSE the denial of Littleton's motion for summary judgment on those claims based on qualified immunity.  We REMAND for proceedings consistent with this opinion.